UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FILIBERTO LAGUNAS ALTAMIRANO,                                                          Petitioner,[1]

v.                                                                                           Civil Action No. 3:25-cv-712-DJH

JEFF TINDALL, Jailer, Oldham County
Detention Center et al.,                                                                    Respondents.

\* \* \* \* \*

**<u>MEMORANDUM AND ORDER</u>**

Petitioner Filiberto Lagunas Altamirano, a noncitizen resident of Illinois currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending his appeal of his removal proceedings. He alleges that his detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The Court granted the parties' joint motion to forgo a show-cause hearing given the absence of a factual dispute (D.N. 10), and the parties have submitted briefs setting out their respective legal arguments (D.N. 12, D.N. 14), with Respondents moving to dismiss for lack of jurisdiction. (D.N. 12) After careful consideration, the Court will deny Respondents' motion and grant Altamirano's petition for the reasons explained below.

---

[1] Petitioner's briefing and certain immigration records refer to his last names as Altamirano Lagunas or Altamirano-Lagunas. (*See, e.g.*, D.N. 1, PageID.1 ¶ 1; D.N. 12-1, PageID.63; D.N. 12-2, PageID.66; D.N. 14, PageID.70) For consistency, the Court will refer to the petitioner by the last name that appears in the caption of the petition.

**I.**

Altamirano is "a native and citizen of Mexico." (D.N. 1, PageID.1 ¶ 1) He "entered the United States without inspection in 1995, when he was approximately 5 years old."[2] (*Id.*, PageID.3 ¶ 11; *see* D.N. 12-1, PageID.64) "On August 12, 2025, [Altamirano] was detained by Respondents in Elgin, Illinois[,] outside his home as he began his commute to work." (D.N. 1, PageID.3 ¶ 9) A Department of Homeland Security agent signed an arrest warrant authorizing Altamirano's detention under section 236 of the Immigration and Nationality Act.[3] (*Id.*; D.N. 1-1, PageID.12) According to the "Record of Deportable/Inadmissible Alien" submitted with Respondents' brief, Altamirano "was asked if he would accept a Voluntary Departure or Stipulated Removal, but [he] refused and stated he wanted to see an immigration judge." (D.N. 12-1, PageID.64) He additionally told agents that "he would refuse to sign any forms placed in front of him." (*Id.*)

Altamirano was issued a Notice to Appear and placed in removal proceedings "with an initial court date of September 8th, 2025."[4] (*Id.*, PageID.65; D.N. 14-2, PageID.92) Altamirano

---

[2] One document included in the record states that Altamirano was six years old when he entered the United States. (D.N. 12-2, PageID.66 ¶ 4)

[3] Section 236 is codified at 8 U.S.C. § 1226. *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *8 (W.D. Ky. Nov. 4, 2025) (citation omitted). The Court uses United States Code citations in this Memorandum and Order.

[4] Altamirano argues that "[b]ecause the [arrest warrant and Notice to Appear] were both prepared post-arrest, [his] arrest is unlawful under the *Casta[ñ]on Nava* Settlement." (D.N. 14, PageID.72) In support, Altamirano points to *Castañon Nava v. Department of Homeland Security*, No. 18-cv-3757, 2025 WL 2842146 (N.D. Ill. Oct. 7, 2025), in which the Northern District of Illinois ruled that certain class members showed that ICE arrested them without an arrest warrant and thus violated a prior settlement agreement. *See* 2025 WL 2842146 at *2. "The parties to *Castañon Nava* are in the process of identifying plaintiffs eligible for relief under the" agreement. *Lopez v. Raycraft*, No. 1:25-cv-1412, 2025 WL 3290655, at *9 (W.D. Mich. Nov. 26, 2025) (citation omitted). Altamirano states that he "filed a claim for release under the *Casta[ñ]on Nava* Settlement" and that "[u]pon information and belief, [he] is within the class of individuals being considered for release pursuant to" the ongoing litigation. (D.N. 14, PageID.73 n.3) As one court within the Sixth Circuit has noted, "release from custody without bond may be an appropriate form of relief in an action *outside of habeas* for violation of the" settlement agreement, but a 28 U.S.C. § 2241 habeas petition "is not the proper avenue for [a petitioner] to seek such relief." *Lopez*, 2025

was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General"; and under § 1182(a)(7)(A)(i)(I) as an immigrant who was "not in possession of a valid unexpired immigrant visa . . . or other valid entry document." (D.N. 14-2, PageID.95) During the September 8, 2025, proceeding, Altamirano "requested a custody redetermination pursuant to 8 C.F.R. § 1236."[5] (D.N. 14-3, PageID.96) The immigration judge denied the request on the ground that Altamirano "entered the United States without inspection" and that the judge thus "lack[ed] jurisdiction to set a bond."[6] (*Id.*) On September 22, 2025, Altamirano filed a motion to withdraw his Form EOIR-42B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents (D.N. 12-2, PageID.66). *See Juarez Mendez v. Raycraft*, No. 1:25-cv-1323, 2025 WL 3214100, at *2 (W.D. Mich. Nov. 18, 2025). He simultaneously moved for "voluntary departure as a form of relief from removal" or, in the alternative, that an "Immediate Removal Order" be entered for him to return to Mexico.[7] (D.N. 12-2, PageID.66–67) In removal proceedings held on October 2, 2025, an immigration judge denied Altamirano's application for cancellation of his removal proceedings. (D.N. 14-4, PageID.99) The immigration judge granted Altamirano's motion for "post-conclusion

---

WL 3290655, at *10. Consistent with *Lopez*, the Court "will not resolve the issue" via Altamirano's § 2241 petition here (*see* D.N. 1, PageID.5 ¶ 17). *Lopez*, 2025 WL 3290655, at *10.

[5] For individuals arrested under 8 U.S.C. § 1226(a), an immigration officer makes an initial custody determination; the noncitizen may then request a custody redetermination (via a bond hearing) before an immigration judge. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1).

[6] One of the authorities the immigration judge cited in support of this determination was *In re Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (D.N. 14-3, PageID.96) In that case, the Board of Immigration Appeals (BIA) determined that noncitizens who "surreptitiously cross into the United States" without admission or inspection are applicants for admission under § 1225(b)(2)(A) and that immigration judges lack jurisdiction to determine such noncitizens' bond requests. 29 I&N Dec. at 228–29.

[7] Altamirano states that he withdrew the September 22, 2025 motions, though when he did so is unclear from the record. (*See* D.N. 14, PageID.73 n.4)

3

voluntary departure" and ordered him to depart the United States by December 2, 2025. (*Id.*) According to the parties, Altamirano also had a pending application for asylum and withholding of removal (*see* D.N. 1, PageID.4 ¶ 15; D.N. 12, PageID.40), but the immigration judge did not rule on that application. (*See* D.N. 14-4, PageID.98) Altamirano's appeal of the immigration judge's determinations "remains pending" before the BIA.[8] (D.N. 1, PageID.4 ¶ 15)

     Altamirano is detained at the Oldham County Detention Center. (*See id.*, PageID.1 ¶ 1; D.N. 14, PageID.74) He seeks a writ of habeas corpus against Oldham County Jailer Jeff Tindall, Chicago ICE Field Office Director Samuel Olson, Department of Homeland Security Secretary Kristi Noem, and U.S. Attorney General Pamela Bondi. (D.N. 1, PageID.1–2 ¶¶ 1–4) Altamirano requests immediate release or, in the alternative, for the Court to schedule a bond hearing for his removal proceedings pursuant to 8 U.S.C. § 1226(a). (*See id.*, PageID.7–8) He also asserts that his detention violates due process. (*See id.*, PageID.7 ¶ 23) Respondents move to dismiss for lack of jurisdiction.[9] (*See* D.N. 12, PageID.37) They argue that (1) Altamirano is lawfully detained under 8 U.S.C. § 1225(b)(2) in mandatory detention; (2) his detention does not violate due process pursuant to § 1225(b)(2); and (3) even if the Court determines that § 1226(a) authorizes Altamirano's detention, the statute does not permit him to be released without receiving a bond hearing before an immigration judge.[10] (*See id.*, PageID.44–61)

---

[8] The immigration judge's decision is not "executed while an appeal is pending or while a case is before the Board by way of certification." 8 C.F.R. § 1003.6(a).

[9] The Court recently observed that a "'motion to dismiss is not contemplated under the [h]abeas [r]ules' because 'such a motion is effectively duplicative of an [a]nswer to a [p]etition, in which all relevant arguments that could be made on such a motion can and should be made.'" *Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *2 n.4 (W.D. Ky. Nov. 26, 2025) (alterations in original) (quoting *Maldonado v. Baker*, No. 25-3084-TDC, 2025 WL 2968042, at *11 (D. Md. Oct. 21, 2025)). Because the Court finds that it has jurisdiction here, the motion to dismiss will "necessarily be denied as to" that issue. *Id.* (quoting *Maldonado*, 2025 WL 2968042, at *11).

[10] Because Respondents make no argument as to whether Altamirano must exhaust administrative remedies (*see generally* D.N. 12), the Court will not address exhaustion.

**II.**

**A.     Jurisdiction**

"A district court may grant a writ of habeas corpus to an individual 'in custody in violation of the Constitution or laws . . . of the United States.'" *Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Section 2241 authorizes courts to hear habeas corpus challenges to the legality of a noncitizen's detention. *See Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Although the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) (citing *Zadvydas*, 533 U.S. at 688).

Respondents contend that the Court lacks jurisdiction under 8 U.S.C. § 1252(g), which states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under th[e Immigration and Nationality] Act." (*See* D.N. 12, PageID.44–46)  According to Respondents, Altamirano "challenges ICE's decision to detain him" as "part of the commencement and adjudication of his removal proceedings." (*Id.*, PageID.44)  The Court previously considered and rejected this argument in a similar matter. *See Alonso*, 2025 WL 3083920, at *2–3.  In *Alonso*, the Court noted that § 1252(g) provides a "narrow" jurisdictional bar that applies only to commencing proceedings, adjudicating cases, and executing removal orders. *Id.* at *2 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999)).  Like the petitioner in *Alonso*, Altamirano asks the Court to review his detention without the opportunity for a bond hearing (*see* D.N. 1, PageID.7 ¶ 22), which § 1252(g) does not

5

prohibit. *See Alonso*, 2025 WL 3083920, at *2–3. Respondents acknowledge that § 1252(g) "does not cover 'all claims' arising from decisions to commence proceedings, adjudicate cases, or execute removal orders." (D.N. 12, PageID.46 (quoting *Reno*, 525 U.S. at 482)) But they argue that "[d]eciding that § 1252(g) only revokes the Court's jurisdiction over the . . . ultimate decision to commence proceedings, adjudicate cases, or [execute] removal orders renders the provision 'arising from' superfluous." (*Id.*) The Court disagrees in light of the Supreme Court's narrow reading of the phrase 'arising from' in § 1252(g). *Reno*, 525 U.S. at 482; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("[W]e read the language [in § 1252(g)] to refer to just those three specific actions themselves."[11] (citing *Reno*, 525 U.S. at 482–83)).

Respondents also argue that § 1252(b)(9) bars jurisdiction. (*See* D.N. 12, PageID.46–50) As the Court has previously explained, § 1252(b)(9) "applies only '[w]ith respect to review of an order of removal.'" *Singh*, 2025 WL 3298080, at *4 (quoting 8 U.S.C. § 1252(b)). Here, Altamirano is challenging the decision to keep him detained without a bond hearing (*see* D.N. 1, PageID.7 ¶ 22). He is "not asking for review of an order of removal"; he is "not challenging the decision to detain [him] in the first place or to seek removal"; and he is "not . . . challenging any part of the process by which [his] removability [is] determined." *Jennings*, 583 U.S. at 294. Thus, § 1252(b)(9) does not bar review. *Id.* at 294–95. In sum, the Court has jurisdiction to consider Altamirano's claims.

**B.     Immigration and Nationality Act**

Altamirano asserts that he is detained under § 1226 of the Immigration and Nationality Act and is thus entitled to a bond hearing. (*See* D.N. 1, PageID.3 ¶ 12) Respondents argue that

---

[11] For the reasons explained in *Alonso* and *Singh*, the Court rejects as unpersuasive or immaterial the cases Respondents cite in support of their argument regarding § 1252(g) (*see* D.N. 12, PageID.44–45). *See Alonso*, 2025 WL 3083920, at *2; *Singh*, 2025 WL 3298080, at *3 n.6.

Altamirano is lawfully detained under § 1225(b)(2)(A) as an applicant for admission who is seeking admission. (*See* D.N. 12, PageID.54–55) They also contend that "an 'applicant for admission' and a person 'seeking admission' are one and the same." (*Id.*, PageID.54)

Respondents' arguments are nearly identical to the government's arguments in *Alonso*, 2025 WL 3083920, at *4–8. The Court thus summarizes and incorporates by reference its reasoning and determination from that case. In *Alonso*, the Court found that the petitioner was an applicant for admission as an "alien present in the United States who ha[d] not been admitted," *id.* at *5 (quoting § 1225(a)(1)), but that he was not seeking admission because he had resided in the United States for an extended period. *See id.* at *5, *7. The Court concluded that the petitioner was detained under § 1226(a), and thus entitled to a bond hearing, because he was "arrested and detained [on a warrant issued by the Attorney General] pending a decision on whether [he was] to be removed from the United States." *Id.* at *5 (quoting § 1226(a)); *id.* at *8.

Altamirano was likewise arrested on a warrant issued by the Attorney General after residing in the United States for approximately three decades. (*See* D.N. 1, PageID.3 ¶ 11; D.N. 1-1, PageID.12) Respondents nevertheless contend that Altamirano is "currently actively seeking lawful admission" because of his asylum application. (D.N. 12, PageID.55) The Court recently rejected that argument in a nearly identical matter, concluding that section 1225(b)(2)(A) "remains inapplicable where such an asylum application 'was not done when [the petitioner] was 'arriving' to [the United States].'" *Singh*, 2025 WL 3298080, at *4 n.8 (alterations in original) (quoting *Santos Franco v. Raycraft*, No. 2:25-cv-13188, 2025 WL 2977118, at *7 (E.D. Mich. Oct. 21, 2025)). Here, as in *Singh*, "neither party has provided evidence showing when [the petitioner] applied for asylum" (*see generally* D.N. 1; D.N. 12; D.N. 14). *Singh*, 2025 WL 3298080, at *4 n.8. And as in *Singh*, "the sole authority cited by Respondents on this point is the interpretation

7

of 'seeking admission' reached in" *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025) (*see* D.N. 12, PageID.55). *Singh*, 2025 WL 3298080, at *4 n.8. The Court explained in *Singh* why it did not follow *Rojas*. *See id.* For the same reasons, the Court declines to follow *Rojas* here.

Respondents additionally argue that the Court should afford *Skidmore* deference to the BIA's decision in *In re Yajure Hurtado*. (*See* D.N. 12, PageID.50) The Court explained in *Singh* why it declined to defer to the BIA's decision, noting that under *Skidmore*, the "weight of [an agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 2025 WL 3298080 at *5 (alteration in original) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Court observed that *In re Yajure Hurtado* "is not consistent with other BIA pronouncements" but rather "pivot[ed] from three decades of statutory interpretation." *Id.* (alteration in original) (citations omitted). Moreover, the Court explained in *Alonso* why it did not agree with the reasoning of *In re Yajure Hurtado*. *Id.*; *see* 2025 WL 3083920 at *4–7. As in *Singh* and *Alonso*, the Court declines to afford *Skidmore* deference to or otherwise follow the BIA's decision.

Consistent with its prior decisions addressing the same issue, the Court concludes that Altamirano is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Singh*, 2025 WL 3298080, at *5; *Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at *3 (W.D. Ky. Nov. 20, 2025); *Lopez*, 2025 WL 3217036, at *3; *Alonso*, 2025 WL 3083920, at *8.

**C.     Due Process**

Altamirano argues that his detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.5–7 ¶¶ 18–22)  Respondents contend that Altamirano "is properly detained under 8 U.S.C. § 1225(b)(2)" and thus "cannot show that his detention violates his due process rights" as provided by that statute.  (D.N. 12, PageID.58)  Because Altamirano is detained under § 1226, not § 1225, Respondents' central argument on the due process required by § 1225(b)(2) is irrelevant.[12]  *Singh*, 2025 WL 3298080, at *5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings.  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025)).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

---

[12] Respondents rely on the due process analysis in *Rojas* (*see* D.N. 12, PageID.58), which involved an automatic stay and a finding that the petitioner was detained under § 1225.  *See* 2025 WL 3033967 at *2, *8.  The findings of the *Rojas* court are not binding here and contradict prior decisions in this district involving identical automatic stays, *see, e.g.*, *Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025).  *Singh*, 2025 WL 3298080, at *5 n.10.

9

Like the petitioners in *Barrera* and other cases recently before the Court, Altamirano "has a significant private interest in not being detained." *Id.*; *Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9. Moreover, "the risk of erroneously depriving [Altamirano] of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *9 (E.D. Mich. Aug. 29, 2025); *see* 8 C.F.R. § 1236.1(c)(8), (d)(1). Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *15 (E.D.N.Y. Oct. 6, 2025). Thus, because all three *Mathews* factors weigh in Altamirano's favor, the Court concludes that his detention violates his due process rights. *See Singh*, 2025 WL 3298080, at *5–6; *Martinez-Elvir*, 2025 WL 3006772, at *11–13; *Barrera*, 2025 WL 2690565, at *6–7; *see also Roman v. Olson*, No. 25-169-DLB-CJS, 2025 WL 3268403, at *6 (E.D. Ky. Nov. 24, 2025) (following *Barrera*).

**D.     Release as a Remedy**

According to Respondents, finding that § 1226(a) governs Altamirano's detention and granting immediate release amounts to "a legal oxymoron." (D.N. 12, PageID.59) Respondents further contend that ordering release and a bond hearing would "usurp[] the discretion of the immigration judge." (*Id.*, PageID.61) Although Altamirano's habeas petition asks the Court to order a bond hearing as an alternative to immediate release (*see* D.N. 1, PageID.7–8), he points out in his reply that "[s]everal courts . . . have ordered the immediate release of unlawfully detained

10

noncitizens with a subsequent bond hearing" before an immigration judge. (D.N. 14, PageID.88; *see also id.* (collecting cases))

The Court recently considered an argument identical to Respondents' position here. *See Salinas*, 2025 WL 3243837, at *4–5. In *Salinas*, the Court concluded that granting immediate release and a bond hearing before an immigration judge prior to any re-detention was appropriate because the petitioner had "been denied the opportunity to pursue the process provided under § 1226(a) and its accompanying regulations[:] she [had] not received the chance for a bond hearing on the merits." *Id.* at *4 (citations omitted). Although the petitioner in *Salinas* had previously been released on a type of conditional parole under § 1226, *see id.*, the Court's analysis applies here because Altamirano has likewise been denied the opportunity for a bond hearing on the merits. In *Salinas*, the Court also found it proper to order a bond hearing before an immigration judge because the judge would "decide whether detention is appropriate based on the applicable regulations and a variety of factors identified by the BIA." *Id.* at *5 (citations omitted). Therefore, the Court will order Altamirano's immediate release and that he be provided a bond hearing pursuant to § 1226(a) if he is re-detained.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Respondents' motion to dismiss (D.N. 12) is **DENIED**.

(2)    Altamirano's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Altamirano, and, if he is arrested and re-detained, provide him with a bond hearing before a neutral Immigration Judge in accordance with

8 U.S.C. § 1226(a). Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **December 5, 2025**.

      (3)      Upon receipt of the notice of compliance, this matter will be **CLOSED**.

December 3, 2025

David J. Hale, Chief Judge  
United States District Court